# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

NICHOLAS L. SCHNATZ,
      Plaintiff,

      vs

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

Case No. 1:11-cv-618
Spiegel, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 12) and the Commissioner's response in opposition. (Doc. 15).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in May 2007, alleging disability since December 31, 2003, due to diabetes, a blood disorder, heart problems, and arthritis. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before Administrative Law Judge (ALJ) Sarah J. Miller. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On May 26, 2010, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Medical Evidence

Plaintiff presented to the emergency department at University Hospital in March 2005 for rectal bleeding. Plaintiff reported that he had colonoscopies in 1998 and 2002 that revealed

multiple polyps. Plaintiff also reported that other than some scant bleeding, he had normal bowel movements, had not had any nausea or vomiting, and no back pain or urinary complaints. Plaintiff had not had any symptoms of anemia, such as lightheadedness or dizziness or weakness. Examination revealed a nontender, nondistended abdomen with positive bowel sounds and no rebound or guarding. Plaintiff was able to move all his extremities with no evidence of clubbing, cyanosis, or edema. He was scheduled for a colonoscopy. (Tr. 222-24).

The record contains treatment notes from the Outpatient Clinic at University Hospital dated from March 2005 through June 2007. (Tr. 225-51). Plaintiff reported in April 2005 that his rectal bleeding had resolved. (Tr. 233). Plaintiff underwent a colonoscopy in May 2005 that revealed multiple polyps, which were removed, without pathological evidence of malignancy. (Tr. 246-51). There was also evidence of sigmoid diverticulosis and internal non-bleeding hemorrhoids. (Tr. 244-51). When examined in July 2005, plaintiff's gastrointestinal issues were noted as stable. (Tr. 235). In June 2007, plaintiff weighed about 292 pounds and had normal sensation in his extremities without evidence of clubbing, cyanosis or edema. (Tr. 245). These records further include findings regarding plaintiff's breathing and pulse oximetry findings. In April 2005, plaintiff's pulse oximetry was 98% saturated at rest and 95% with exercise. (Tr. 230). Plaintiff intermittently reported pain in his knees and feet throughout these records. (Tr. 235, 238, 239).

Plaintiff began treating at the Barrett Cancer Center Hematology Clinic with Rami Komrokji, M.D., in April 2005 for evaluation of polycythemia.[1] (Tr. 299-306). Treatment records from April 26, 2005 include normal physical examination findings and diagnoses of

---

[1] Polycythemia vera is a bone marrow disease that leads to an abnormal increase in the number of blood cells (primarily red blood cells). *See* http://www.mayoclinic.com/health/polycythemia-vera/DS00919 (last visited August 17, 2012).

coronary artery disease and colonic polyps, with a recent finding of polycythemia. (Tr. 305). Dr. Komrokji ordered further testing to evaluate the polyps. (Tr. 305-06). In July 2006, plaintiff reported that he had been receiving quarterly phlebotomies and did not report any symptoms; physical examination revealed normal results and Dr. Komrokji recommended phlebotomy, Hydrea and baby aspirin to treat plaintiff's elevated red blood cells.[2] (Tr. 303). January 2007 notes include plaintiff's report that he was progressing well and had no new complaints; findings that plaintiff had mild shortness of breath on exertion but otherwise normal examination results; and Dr. Komrokji's notes to continue plaintiff on periodic phlebotomies, an aspirin regimen, and Hydroxyurea[3] to address cardiac risk factors. (Tr. 301-02). The last records from Dr. Komrokji are from plaintiff's March 11, 2008 follow-up. (Tr. 299-300). Plaintiff denied neurological problems, numbness or burning in his extremities, and chest pain and shortness of breath, but reported severe chronic bilateral knee pain secondary to osteoarthritis. (Tr. 299). Physical examination revealed normal results apart from trace edema in his bilateral lower extremities. *Id.* Dr. Komrokji noted that plaintiff had not needed a phlebotomy for ten months as his hematocrit was controlled. (Tr. 299). Plaintiff was continuously advised to cease smoking. (Tr. 299-306).

In July 2007, Jennifer Wischer Bailey, M.D., examined plaintiff for disability purposes. (Tr. 252-60). Plaintiff complained of bilateral knee pain, worse with movement, but denied using any braces or heating pads. (Tr. 253). Plaintiff also reported a history of shortness of

---

[2] Plaintiff underwent a hematocrit, a test which measures the percentage of the volume of whole blood that is made up of red blood cells. *See* www.nlm.nih.gov/medlineplus/ency/article /003646.htm (last visited August 20, 2012). Plaintiff's hematocrit was 46.5 and Dr. Komrokji opined that it should be kept under 45. (Tr. 303). Otherwise, plaintiff was reported as doing well clinically. *Id.*

[3] Hydroxyurea is used to control polycythemia vera. *See* www.nlm.nih.gov/medlineplus/ druginfo/meds/a682004.html (last visited August 20, 2012).

breath, chest pain, and diabetes. (Tr. 253-54). On examination, plaintiff weighed 278 pounds, had a stiff limping gait, but did not use any ambulatory aids. (Tr. 254). Plaintiff's range of motion of the cervical spine was within normal limits. *Id.* Plaintiff's upper extremities were normal, he was able to bend forward at the waist at ninety degrees without difficulty and was able to stand on either leg and heel-to-toe walk without difficulty. (Tr. 255). Dr. Bailey found no evidence of muscle weakness or atrophy in his lower extremities and plaintiff's sensation and reflexes were intact. *Id.* Plaintiff's range of motion of the knees was rigid, and there was evidence of edema over the right knee. *Id.* Plaintiff's flexion of the knees was slightly diminished and there was no evidence of crepitus or laxity over the knee joints. *Id.* In addition, there did not appear to be any rotatory instability of the knees. *Id.* Dr. Bailey diagnosed plaintiff with alcoholism, morbid obesity, shortness of breath with ongoing heavy tobacco use - likely chronic obstructive pulmonary disorder, chest pain – likely mild angina, diabetes, polycythemia vera, and degenerative joint disease in the knees. (Tr. 256). Dr. Bailey noted that plaintiff was comfortable in the seated and standing position and presented no evidence of active wheezing. *Id.* Dr. Bailey stated that plaintiff's obesity contributed to his symptoms and that it would be beneficial to lose weight. *Id.*

Dr. Bailey opined that plaintiff was able to perform a mild to moderate amount of sitting, ambulating, standing, bending, pushing, pulling, lifting, and carrying heavy objects, but that he would be unable to kneel. She further opined that plaintiff had no difficulty reaching, grasping, or handling objects, and that he would do best in a dust-free environment. (Tr. 256).

In August 2007, D. Wiltse, M.D., completed a pulmonary function study on plaintiff. (Tr. 262-65). Upon review of the testing results, Dr. Wiltse opined that plaintiff had a moderate obstruction improved after medication (Albuterol). (Tr. 264-65).

4

State agency physician Jerry McCloud, M.D., reviewed the file in September 2007, and completed a physical residual functional capacity assessment. (Tr. 278-85). Dr. McCloud opined that plaintiff could occasionally lift/carry up to 50 pounds and frequently up to 25 pounds; stand/walk or sit for about six hours in an eight-hour day; occasionally climb ramps and stairs, stoop, crouch or crawl; never kneel and never climb ladders, ropes, or scaffolds. (Tr. 279-80). According to Dr. McCloud, plaintiff should also avoid concentrated exposure to fumes, odors, dusts, gasses, poor ventilation, and hazards such as machinery or heights. (Tr. 279-80, 282). State agency physician William Bolz, M.D., affirmed Dr. McCloud's assessment in January 2008. (Tr. 298).

Plaintiff was treated at the Hoxworth Adult Clinic at University Hospital on January 2, 2008. (Tr. 318). Plaintiff complained of pain in his knees, but there was no evidence of clubbing, cyanosis, or edema on examination and he had normal sensation in his lower extremities. *Id*. When seen on January 23, 2008, plaintiff's weight was recorded at 249 pounds and complaints of knee pain continued; he was diagnosed with tri-compartmental stenosis in the knees. (Tr. 327). On March 6, 2008, the clinic physician changed plaintiff's medication from Ibuprofen to Ultram after he reported that his current medication was not helping, and further suggested that plaintiff would likely need a knee replacement. (Tr. 339). Plaintiff was seen in the clinic for diabetic neuropathy in March and July 2008. (Tr. 370, 413).

In April 2008, plaintiff was seen at the Orthopaedic Center at University Hospital. (Tr. 374-80). Plaintiff reported that he had knee arthroscopy seven year prior with good results, but in the last five years he had increased knee discomfort going up and down steps and ladders and with general activity. (Tr. 374). Plaintiff denied any swelling with the discomfort. *Id*. On examination, plaintiff had minimal swelling and some tenderness in the knees; full extension on

5

his left and only slightly diminished extension on his right; and he was able to passively extend both legs and both knees were stable. *Id*. The physician's assistant who examined plaintiff, Daniel Greene, P.A., diagnosed moderate bilateral knee osteoarthritis and offered bilateral knee injections which plaintiff declined for the moment. (Tr. 375). P.A. Greene informed plaintiff that his knee problem could be managed conservatively, through medication, injections, and at-home exercises, until he was in need of a total knee arthroplasty. *Id*. X-rays taken that same day of both knees revealed moderate tricompartmental osteoarthritis. (Tr. 380, 407).

When plaintiff returned to the clinic in June 2008, he received injections in his knees for pain. (Tr. 403-09). At that time, plaintiff was examined and found to have minimal tenderness to palpation in the lateral right knee; 5/5 strength in his lower extremities; and slightly diminished range of motion in both knees. (Tr. 407). In October 2008, plaintiff reported some minor trauma to his left knee while doing yard work when he rolled his ankle off of a sidewalk and experienced knee pain afterward, but also stated that the injections helped significantly for at least three months. (Tr. 454). On examination, plaintiff's knees revealed full extension on the right and slightly diminished extension on the left with mild tenderness with palpation on the medial and lateral joint lines and stable to ligamentous testing. *Id*. An MRI showed a lateral meniscus root tear with extrusion, and confirmed tricompartmental osteoarthritis. (Tr. 453).

Plaintiff was next seen in the Orthopaedic Clinic on April 27, 2009. He reported continued pain in his knees, but noted that he got excellent relief from the injections. Plaintiff also stated that he was not using any nonsteroidal anti-inflammatory medication and was not doing any quadriceps strengthening exercises. Examination revealed crepitus throughout range of motion and sensation was intact distally. Plaintiff received bilateral knee injections, was prescribed medication, and shown how to do quadriceps strengthening exercises. (Tr. 503).

6

That same day plaintiff was seen in the Hematology Clinic for a follow-up for polycythemia. (Tr. 504-08). Plaintiff was noted as doing well after being off Hydroxyurea for four months. (Tr. 506). On July 24, 2009, plaintiff went for a follow-up for diabetic neuropathy. (Tr. 502).

On October 5, 2009, plaintiff was seen for bilateral knee pain and received knee injections. P.A. Greene discussed with plaintiff that at some point the injections will be ineffective and that plaintiff would likely need a knee replacement in the future. (Tr. 500).

Slobodan Stanisic, M.D., evaluated plaintiff for his polycythemia vera on October 9, 2009. (Tr. 534-37). Plaintiff reported problems with flushing, itching and pruritus after showering, fatigue, weakness, numbness and tingling in his legs, feet and hands. (Tr. 534). Plaintiff's hematocrit was 44.5 and they proceeded with a phlebotomy. (Tr. 537).

Ali Razavi, M.D., a cardiologist, evaluated plaintiff on October 14, 2009 for chest pain and shortness of breath. (Tr. 565-66). An EKG revealed evidence of mild ischemia and a small partially reversible inferolateral defect consistent with old infarction. (Tr. 567-68). Plaintiff underwent a coronary angiography on November 9, 2009, which revealed 70% stenosis in the mid right coronary artery and 90% stenosis in the distal right coronary artery. (Tr. 550). Two stents were placed to the right coronary artery. (Tr. 550-58, 564). On December 1, 2009, Dr. Temizer, the cardiac surgeon, saw plaintiff for follow-up three weeks following surgery and reported that plaintiff was doing well and his coronary disease was stable and compensated. (Tr. 563).

When seen by Dr. Stanisic for follow-up of his polycythemia vera on December 18, 2009, plaintiff reported that his energy level was diminished and he had generalized fatigue and

7

weakness and was unable to do activities for more than an hour or two at a time. Dr. Stanisic noted that plaintiff just had two stents placed. (Tr. 530-32).

Plaintiff was seen by Arnold Penix, M.D., at Ohio Valley Orthopaedics and Sports Medicine for worsening bilateral knee pain. Plaintiff was noted as having a mildly antalgic gait, mild crepitation bilaterally, but full range of motion in his knees, and was diagnosed with osteoarthritis of the knees bilaterally. On May 17, 2010, plaintiff was scheduled for a right total knee replacement/arthroplasty on June 30, 2010. (Tr. 586-91).

## III. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson* v. *Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The [plaintiff] has not engaged in substantial gainful activity since December 31, 2003, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: morbid obesity, shortness of breath with ongoing heavy tobacco abuse, likely chronic obstructive pulmonary disease, chest pain with likely mild angina, coronary artery disease, hypertension, history of coronary angioplasty and stenting, non-insulin-dependent diabetes mellitus, polycythemia, and degenerative joint disease of the knees (20 C.F.R. 404.1520(c) and 416.920(c)).

9

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to lift 50 pounds occasionally and 25 pounds frequently. In an eight-hour workday, the [plaintiff] is able to stand and/or walk about 6 hours and sit about 6 hours (all with normal breaks). The [plaintiff] is able to occasionally climb ramps/stairs, stoop, crouch, and crawl and should never kneel and climb ladders/ropes/scaffolds. The [plaintiff] should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and dangerous hazards such as machinery and heights.

6. The [plaintiff] is capable of performing past relevant work as an inspector. This work does not require the performance of work-related activities precluded by the [plaintiff's' residual functional capacity (20 C.F.R. 404.1565 and 416.965).

7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from December 31, 2003, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 11-20).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,*

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,*

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

(1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

## D. Specific Errors

On appeal, plaintiff raises three assignments of error: (1) the ALJ failed to comply with Social Security Ruling (SSR) 02-01p by not considering the impact of plaintiff's obesity on his ability to work; (2) the ALJ erred in formulating plaintiff's residual functional capacity (RFC) by relying on the opinion of a reviewing physician whose opinion was not based on a complete review of the record; and (3) the ALJ's conclusory finding that plaintiff could perform his past relevant work does not comply with SSR 82-62p.

1. The ALJ did not err in considering the impact of plaintiff's obesity in formulating his RFC.

Plaintiff contends the ALJ failed to comply with the requirements of SSR 02-1p, 2000 WL 628049, because she failed to: (1) appropriately consider the impact of plaintiff's obesity on his ability to work; (2) discuss how plaintiff's obesity was factored into her RFC determination;

11

and (3) explore the negative impact that plaintiff's obesity has on his coronary artery disease, diabetes, and degenerative joint disease impairments. (Doc. 12 at 2-4). In response, the Commissioner asserts that the ALJ complied with the requirements of SSR 02-1p by acknowledging the findings of examining physician Dr. Bailey and other medical providers that plaintiff is obese and that obesity contributes to his symptoms, and by relying on Drs. Bailey's and McCloud's opinions regarding plaintiff's limitations in formulating his RFC. (Doc. 15 at 8-10).

SSR 02-01p recognizes that obesity may affect an individual's ability to perform the exertional functions of sitting, standing, walking, lifting, carrying, pushing, and pulling, as well as an individual's ability to perform postural functions such as climbing, balancing, stooping, and crouching. SSR 02-01p, 2000 WL 628049, at *6. SSR 02-01p does not mandate a particular mode of analysis for an obese disability claimant. *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006). Rather, the Ruling simply recognizes that "obesity, in combination with other impairments, 'may' increase the severity of the other limitations." *Id.* at 418 (quoting SSR 02-1p).

Here, the evidence of record demonstrates that the ALJ adequately considered plaintiff's obesity in formulating his RFC by relying on the opinions of examining physician Dr. Bailey and reviewing physician Dr. McCloud, both of whom explicitly accounted for plaintiff's obesity in formulating their opinions. When examining plaintiff in July 2007, Dr. Bailey noted that at six feet two inches tall and 278 pounds, plaintiff was morbidly obese. (Tr. 253-54). Dr. Bailey diagnosed plaintiff with: (1) alcoholism; (2) morbid obesity; (3) shortness of breath with ongoing heavy tobacco abuse, likely chronic obstructive pulmonary disease; (4) chest pain, likely mild

12

angina; (5) noninsulin dependent diabetes mellitus; (6) polycythemia vera; and (7) degenerative

joint disease, knees.  (Tr. 256).  Dr. Bailey opined that plaintiff's "[o]besity contributes to [his]

symptoms, and weight reduction would diminish his complaints."  *Id.*  In his review of the

medical record in September 2007, Dr. McCloud diagnosed plaintiff with obesity, largely

adopted Dr. Bailey's opinion, and limited plaintiff to occasional lifting of 50 pounds; frequent

lifting of 25 pounds; standing and/or walking and sitting for a total of six hours in an eight-hour

workday; occasional climbing of ramps/stairs; occasional stooping, crouching and crawling; no

climbing of ladders/ropes/scaffolds and no kneeling; and no exposure to fumes, odors, dusts,

gases, poor ventilation, and workplace hazards such as machinery and heights.  (Tr. 278-82).

   The ALJ's decision acknowledges that plaintiff's obesity may increase the severity of his

other impairments, but "even when obesity is considered as a contributing and exacerbating

factor[,]" none of plaintiff's impairments meet or equal any listed impairment.  (Tr. 12).  The

ALJ explicitly acknowledged Dr. Bailey's obesity findings in her decision (Tr. 15-16, citing Tr.

254) and made clear that she credited Drs. McCloud's and Bailey's reports and opinions.  (Tr.

20) (the ALJ gave "great weight to the opinion of the state agency medical consultants.  [Dr.

McCloud's] opinion is consistent with the opinion of Dr. Bailey who had performed a thorough

examination of the [plaintiff] and reached the same conclusion.  Moreover, there is no supporting

opinion to the contrary.") (internal citations omitted).  The ALJ also discussed records noting

plaintiff's obesity (Tr. 14, citing Tr. 254, 301), Dr. Bailey's notes that plaintiff's inability to

squat and difficulty climbing onto the examination table were likely exacerbated due to obesity

(Tr. 15, citing Tr. 256), and various recorded weights demonstrating that plaintiff meets the

13

criteria for obesity. (Tr. 15, citing Tr. 231, 239-40, 245, 254, 563). In light of this evidence, the ALJ determined that plaintiff's obesity is an aggravating and contributing factor to his knee pain. (Tr. 15-16). Thus, the record demonstrates that the ALJ considered the evidence of plaintiff's obesity and utilized the opinions of Drs. Bailey and McCloud in fashioning plaintiff's RFC and thereby incorporated into the RFC assessment the effect that obesity has on plaintiff's ability to work. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) (by utilizing opinions of physicians who explicitly accounted for the claimant's obesity when fashioning the RFC, the ALJ incorporated into the RFC the effect obesity has on the claimant's ability to work). *See also Bledsoe*, 165 F. App'x at 412 ("[T]he ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity.").

Given the absence of any evidence that plaintiff's obesity has increased the severity of his limitations to a greater extent than assessed by Dr. Bailey or Dr. McCloud, the record demonstrates the ALJ adequately accounted for plaintiff's obesity in formulating the RFC. Accordingly, plaintiff's first assignment of error should be overruled.

2. The ALJ did not err in relying on the opinions of the consultative examining and state agency reviewing doctors in formulating plaintiff's RFC.

For her second assignment of error, plaintiff asserts that the ALJ erred by relying on the opinions of Dr. Bailey, the consultative examiner, and Dr. McCloud, the state agency reviewing physician, in formulating his RFC as their opinions were not based on a review of the complete record. (Doc. 12 at 4-7). The Commissioner responds that the ALJ's reliance on the opinions of Drs. Bailey and McCloud is proper as: (1) their opinions were formed after plaintiff's alleged

14

disability onset date; (2) their opinions are consistent with the later-generated evidence cited by plaintiff; and (3) there is no evidence or opinion of record supporting greater limitations than those accounted for in the RFC formulated by the ALJ. (Doc. 15 at 10-12). For the following reasons, the undersigned finds that the ALJ did not err in formulating plaintiff's RFC in reliance upon the opinions of Drs. Bailey and McCloud.

The applicable regulations lay out the three types of acceptable medical sources upon which an ALJ may rely on: treating source, nontreating source, and nonexamining source. 20 CFR §§ 404.1502, 416.902. When treating sources offer opinions, the Social Security Administration is to give such opinions the most weight and is procedurally required to "give good reason in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d at 875. This requirement only applies to treating sources. *Id.* at 876. "With regard to nontreating, but examining, sources, the agency will simply generally give more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not examined him." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(1)) (internal citations omitted).

Here, plaintiff argues that the ALJ erred by giving "great weight" to the opinion of Dr. McCloud because his opinion, as well as the opinion of Dr. Bailey upon which he relied, was not based on a complete review of the record. In support, plaintiff cites to a myriad of records spanning from January 2008 to May 2010 which include, *inter alia*, a diagnosis of tri-compartmental stenosis of the knees (Tr. 327); complaints of and treatment for knee pain (Tr.

15

379, 388, 405, 407, 409, 454, 457-59, 500, 503); treatment for chest pain (Tr. 565-66); EKG

findings of mild ischemia (Tr. 567-68); and follow-up treatment for plaintiff's diabetic

neuropathy. (Tr. 370, 413, 502, 510, 530-32). However, none of the records cited by plaintiff

include any statement from an examining doctor that these findings or related treatments limit

plaintiff's functioining in any way.[4] Moreover, plaintiff's argument consists simply of a list of

medical evidence but fails to identify how these later-generated records indicate that his

functional limitations are greater than those prescribed by Drs. Bailey and McCloud. Without

any evidence that the opinion evidence relied upon by the ALJ is contradicted by the record, the

undersigned is unable to find fault with her decision to rely on it in formulating plaintiff's RFC.

      As noted by the Commissioner in his response, there is no regulation or case law that

requires the ALJ to reject an opinion simply because medical evidence is generated after the

opinion is formed. Indeed, the regulations provide only that an ALJ should give more weight to

an opinion that is consistent with the record as a whole. 20 C.F.R. §§ 404.1527(c)(4),

416.927(c)(4).[5] The ALJ explained that she gave "great weight to the opinion of [Dr. McCloud

because] it is consistent with the opinion of Dr. Bailey who had performed a thorough

examination of the [plaintiff] and reached the same conclusion [regarding his limitations].

Moreover, there is no supporting opinion to the contrary." (Tr. 20) (internal citations omitted).

The ALJ also noted that medical evidence generated after Dr. Bailey submitted her report

---

[4] Notably, the record is wholly devoid of any opinion from a treating or examining physician (apart from that of Dr. Bailey) who has opined that plaintiff's impairments cause him any functional limitations.

[5] Regulations 20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012. The provisions governing the weight to be afforded a medical opinion were previously found at §§ 404.1527(d) and 416.927(d).

16

Case: 1:11-cv-00618-SAS-KLL Doc #: 16 Filed: 08/28/12 Page: 17 of 22  PAGEID #: 675

included findings consistent with those made by Dr. Bailey in 2007. (Tr. 15, citing Tr. 307-497 (outpatient records from University Hospital)). A review of the medical evidence supports the ALJ's finding.

As discussed above, Dr. Bailey's July 2007 examination of plaintiff resulted in findings that plaintiff had knee pain and walked with a stiff limping gait and a rigid range of motion and slightly diminished flexion of the knees but otherwise had normal range of motion in his extremities and spine, no rotatory knee instability, and could stand on either leg and heel-to-toe walk without difficulty. (Tr. 253-55). Dr. Bailey noted plaintiff's history of shortness of breath, diabetes, and obesity and observed that he had no evidence of active wheezing and was comfortable in both the seated and standing positions. (Tr. 253-56). The later-generated evidence includes similar observations: April 2008 examination notes include findings of minimal swelling, limited flexion in the right knee, full flexion in the left knee, with some tenderness to palpation, but plaintiff's knees were stable to ligamentous testing and he declined knee injections (Tr. 379); plaintiff received knee injections in June 2008 (Tr. 405) and reported in October 2008 that they provided significant pain relief for over three months (Tr. 454); examination in October 2008 revealed that plaintiff had full range of motion in his right knee, slightly diminished in the left knee, with mild tenderness to palpation, and his knee osteoarthritis was described as mild to moderate (Tr. 454); April and October 2009 examinations revealed crepitus in the knees but plaintiff reported good relief from injections (Tr. 500, 503); an April 2010 examination showed plaintiff walked with a mildly antalgic gait, had knee motion from 0 to 125 degrees flexion, and had mild crepitation bilaterally (Tr. 587); and plaintiff's hypertension

17

was noted as being well-controlled on medication.  (Tr. 388).  Though the record includes

treatment notes for plaintiff's diabetes, including splitting and cracking in his feet (Tr. 370, 413,

502, 510), there are no findings or observations that his diabetes affected his functional

capabilities.  Rather, as noted by the ALJ, records from April 2008 indicate that plaintiff's

diabetes was well controlled.  (Tr. 388).  Further, while plaintiff was diagnosed with tri-

compartmental stenosis of the knees in January 2008 (Tr. 327) and was later advised that he

would likely need knee replacement surgery (Tr. 339), there is no medical opinion that this

condition functionally limits plaintiff to an extent greater than provided for in the RFC

formulated by the ALJ.  *See McKenzie v. Comm'r of Soc. Sec.*, No. 99-3400, 2000 WL 687680,

at *5 (6th Cir. May 19, 2000) (citing *Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988))

("[T]he mere diagnosis of an impairment does not render an individual disabled nor does it

reveal anything about the limitations, if any, it imposes upon an individual.").

The ALJ is the ultimate decision-maker regarding plaintiff's RFC and is to take into

consideration the opinions of medical sources and other relevant evidence.  *See* 20 C.F.R.

§§ 404.1527(c), 416.927(c), 404.1545, 416.945.  In this case, the ALJ was presented with two

consistent medical opinions and non-contradictory later-generated evidence.  In determining

plaintiff's RFC, the ALJ took into consideration the record as a whole, and determined that Dr.

McCloud's opinion, based on Dr. Bailey's examination, was consistent with and supported an

RFC for medium-work with additional environmental and physical limitations.  The ALJ's

decision lays out her rationale for giving "great weight" to Dr. McCloud's opinion and

sufficiently details the evidence of record, indicating that she complied with the applicable

regulations in formulating plaintiff's RFC. In light of the evidence of record and the lack of evidence supporting greater limitations than those accounted for by the ALJ, plaintiff's second assignment of error should be overruled.

3.  The ALJ's determination that plaintiff could perform his past relevant work as an inspector is supported by substantial evidence.

For his final assignment of error, plaintiff contends that the ALJ erred in determining that plaintiff could do his past relevant work as an inspector by failing to include specific findings as required by SSR 82-62p, 1982 WL 31386. Specifically, plaintiff asserts that the ALJ failed to provide "a finding of fact as to the physical and mental demands of [p]laintiff's past relevant work as an inspector[,]" aside from noting that the Dictionary of Occupational Titles lists it as a medium skilled job. (Doc. 12 at 8, citing Tr. 20). In response, the Commissioner argues that the ALJ's RFC finding is substantially supported by the evidence of record and, along with the VE's testimony, supports a finding that plaintiff can perform his past relevant work and, consequently, is not disabled pursuant to 20 C.F.R. §§ 404.1520(f) and 416.920(f). For the reasons that follow, the undersigned finds that the ALJ's determination that plaintiff is able to perform his past relevant work as an inspector is substantially supported by the evidence of record.

SSR 82-62p provides the following criteria for an ALJ's determination that a social security plaintiff is able to perform his past relevant work:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> > 1. A finding of fact as to the individual's RFC.
> > 2. A finding of fact as to the physical and mental demands of the past

19

job/occupation.
3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62p, 1982 WL 31386, at *4. "The function of the VE is to advise the ALJ of jobs found among various categories of employment which the plaintiff can perform with [his] limitations." *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009). In determining whether a plaintiff is capable of performing his past relevant work, an ALJ may rely on a VE's responses to hypothetical questions which incorporate all credible limitations, as the VE is qualified to tailor his opinion to an individual plaintiff's particular RFC. *Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (citing *Hardaway Sec'y of H.H.S.*, 987 F.2d 922, 927-28 (6th Cir. 1987)); *Beinlich*, 345 F. App'x at 168 (quoting *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003)).

The ALJ posed the following hypothetical question to the VE at the ALJ hearing:

[ALJ]: [A]ssume because of the [plaintiff's] impairments – Dr. Bailey noted the [plaintiff] appeared capable of performing a moderate amount of sitting, ambulating, standing, bending, push and pull, and lifting and carrying. She stated he was unable to kneel; had no difficulty reaching, grasping handling; no visual or communicational limitations, and would do best with a dust-free environment. So assume that means during the course of an eight-hour day the [plaintiff] can sit for six hours, stand or walk for six hours, frequently lift or carry 25 pounds, occasionally lift or carry 50 pounds; can never climb ladder, rope or scaffolds; can never kneel; can occasionally climb ramps or stairs; occasionally stoop, crouch; should avoid concentrated exposure to fumes, odors, dust gases, poor ventilation; should avoid concentrated exposure to hazardous equipment, dangerous machinery and heights. . . . With those limitations could the [plaintiff] perform the past work or any other work?

[VE]: With those limitations he could perform past relevant work activity.

20

(Tr. 72). This exchange demonstrates that the ALJ presented a hypothetical question to the VE which incorporated all of plaintiff's medically supported limitations pursuant to Dr. Bailey's examination findings and opinion and Dr. McCloud's prescribed limitations. The VE testified that such an individual would be able to perform plaintiff's past relevant work. The ALJ is permitted to rely upon such testimony in finding at Step Four of the sequential evaluation that plaintiff is not disabled. *Casey*, 987 F.2d at 1235.

While plaintiff argues that the ALJ is required to provide findings of fact on the specific physical and mental demands of plaintiff's past relevant work, he cites to no authority supporting this position. All that is required of the ALJ under SSR 82-62p is that her decision include "[a] finding of fact that the [plaintiff's] RFC would permit a return to his or her past job or occupation." SSR 82-62p, 1982 WL 31386, at *4. The instant decision includes such a factual finding. *See* Tr. 20. Plaintiff has failed to cite to any evidence contradicting the VE's testimony or any authority supporting his position that a more detailed discussion is required under the applicable regulations and rulings. Accordingly, plaintiff's third assignment of error should be overruled.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 8/28/12

Karen L. Litkovitz
United States Magistrate Judge

21

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

NICHOLAS L. SCHNATZ,                                    Case No. 1:11-cv-618
    Plaintiff,                                           Spiegel, J.
                                                   Litkovitz, M.J.

      vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).